1

2

3

4

5

6

7

8                                     UNITED STATES DISTRICT COURT

9                            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ERIC L. WAYNE,                                    Case No.  1:22-cv-01648-BAM

12                      Plaintiff,
                                                       **ORDER REVERSING AGENCY'S DENIAL
13            v.                                        OF BENEFITS AND ORDERING REMAND**

14   KILOLO KIJAKAZI, Acting Commissioner               (Doc. 13)
     of Social Security,
15

16                      Defendant.

17

18

19                                        **INTRODUCTION**

20            Plaintiff Eric L. Wayne ("Plaintiff") seeks judicial review of a final decision of the

21   Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security

22   Income under Title XVI of the Social Security Act.  The parties' briefing on the motion was

23   submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.  (Docs. 13, 16, 17.)[1]

24            Having considered the parties' briefs, along with the entire record in this case, the Court finds

25   that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in

26

27   _____

28   [1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case,
     including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Doc. 10.)

                                                       1

1    the record and is not based upon proper legal standards.  Accordingly, this Court will reverse the

2    Commissioner's determination and remand for further proceedings.

3                                    **FACTS AND PRIOR PROCEEDINGS**

4              Plaintiff applied for Supplemental Security Income on November 29, 2017, alleging disability

5    beginning February 1, 2015.  AR 339-347.[2]  Plaintiff's application was denied initially on June 29,

6    2018 and on reconsideration on November 19, 2018.  AR 165-169; 177-183.  Plaintiff requested a

7    hearing before an administrative law judge ("ALJ") and ALJ John Flanagan held a hearing on January

8    9, 2020.  AR 66-91.  ALJ Flanagan issued an order denying benefits on the basis that Plaintiff was not

9    disabled on February 18, 2020.  AR 14-34.  Plaintiff sought review of the ALJ's decision, which the

10   Appeals Council denied.  AR 1-6.  Plaintiff filed a complaint against the Commissioner in the

11   Northern District of California, and the case was ultimately remanded on October 7, 2021 based upon

12   the parties' joint stipulation.  AR 839-850; 854-858; 861-862 (Order of Appeals Council remanding

13   the case and noting errors in the vocational expert's selection of a job with apparently inappropriate

14   RFC and vocational expert's job number estimates for an assembler job and table worker job).

15             Upon remand, ALJ Kevin Gill held a hearing on September 15, 2022.  AR 787-811.  ALJ Gill

16   subsequently denied benefits on the basis that Plaintiff was not disabled on October 26, 2022.  AR

17   764-786.  The Appeals Council did not review ALJ Gill's decision, making ALJ Gill's decision the

18   Commissioner's final decision.  This appeal followed.

19          **September 15, 2022 Hearing Testimony**

20             ALJ Kevin Gill held a telephonic hearing on September 15, 2021.  AR 787-811.  Plaintiff

21   appeared with his attorney, John Metsker.  *Id.*  Alan E. Cummings, an impartial vocational expert, also

22   appeared and testified.  AR 804-810.  The ALJ began by admitting exhibits B-1A to B-8F into

23   evidence.  AR 791.  Plaintiff's attorney then noted the case had been remanded and that he believed

24   there was not a significant number of jobs within Plaintiff's Residual Functional Capacity ("RFC").

25   *Id.*

26

27   _____

28   [2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1    Plaintiff testified that he was born on July 31, 1976, his current height and weight were 6'6"

2    and 267 pounds and he was right-handed.  AR 791-792.  Plaintiff noted that he was single and stopped

3    going to school around 11th grade and did not receive a GED.  AR 792.  He further testified that he did

4    not have any vocational training, and last worked for approximately two months around 2018 when he

5    was injured on the job.  *Id.*  In 2018, he injured his lower back and right knee by falling in a

6    warehouse when a ramp was not lowered.  *Id.*  Plaintiff testified that he still deals with severe swelling

7    in his right knee and has "some type of arthritis around [his] knee joints" as well as vascular vein

8    issues in his lower right leg.  *Id.*  He testified that standing for long periods of time brings on the

9    swelling and vascular vein issues.  AR 794.  When the swelling occurs, Plaintiff must stay off the leg

10   or elevate the leg.  *Id.*  He also noted that he had ankle problems and discolored skin issues.  *Id.*  He

11   further stated that took Xarelto blood thinners due to blood clots in his right thigh and lower leg.  AR

12   795.  Plaintiff testified that he also dealt with an ankle deformity and gout, which causes him nerve

13   pain from walking on a different part of his foot.  *Id.*  Plaintiff said he was told that if he received

14   surgery to fix this problem, he might lose movement in his feet.  *Id.*

15       In response to questions from his attorney, Plaintiff noted that over the previous 2.5 years, his

16   right knee, lower leg, vascular vein, and ankle pain conditions had deteriorated.  AR 796-797.  He

17   stated that doctors prescribed different pain pills, but they did not resolve the pain Plaintiff felt.  AR

18   797.  Plaintiff said that he stayed off his feet at least 90 percent of the day because of blood clots in his

19   legs.  *Id.*  He also stated that he had irregular heartbeats.  *Id.*  He noted that he was provided special

20   shoes, orthopedics, and a special foot insole, but they did not resolve his conditions.  *Id.*  Plaintiff said

21   that he was provided a cane by Concentra Medical that he used prior to his incarceration but was not

22   permitted to use a cane while incarcerated.  AR 797-798.  He testified that without his cane, he walks

23   with a limp and at a slow pace so that he can stop to lean on things for support.  AR 798.  Prior to

24   incarceration, he used the cane in his right hand to prevent further damage to his right leg.  *Id.*

25   Plaintiff said that during the day, he stayed on his bed approximately 90 percent of the time to elevate

26   his leg and spends the remaining ten percent of the day walking around to deal with his blood clots.

27   *Id.*  While lying on his bed, he meditated, slept, or read while elevating his leg.  AR 799.  After

28   approximately four to six minutes, his knee would swell and require him to sit down and elevate his

1    leg for a long period of time.  AR 800-801.  He testified that he did not have any other employment

2    beyond the 2018 warehouse temp job.  AR 801.

3         Plaintiff further testified that he had mental health and anger issues.  AR 801.  He testified that

4    following an incident in which he drowned and was resuscitated at age nine, he suffered from

5    outbursts of anger.  *Id.*  He stated that he could not be around people due to his outbursts and

6    frustration.  AR 802.  He also stated that he suffered from physical abuse when he was younger and

7    went to juvenile hall because of his outbursts.  *Id.*  He stated that he was previously incarcerated for

8    robbery that he committed when he was homeless.  AR 802-803.  He stated that he expected to be

9    released within six months after talking to a counselor to ensure that he was fully rehabilitated.  AR

10   803.

11        Following Plaintiff's testimony, the ALJ elicited testimony from vocational expert ("VE")

12   Cummings.  AR 804-810.  Plaintiff's counsel stated that he did not have any objections to the VE's

13   qualifications.  AR 804.  VE Cummings first affirmed that he could give an impartial and neutral

14   opinion in the case; had not previously discussed his testimony with the ALJ, Plaintiff, or Plaintiff's

15   counsel; and that he had the opportunity to review the relevant claim file and Plaintiff's testimony.

16   AR 805.  The VE asked Plaintiff whether he was unloading trucks in his warehouse role, and Plaintiff

17   responded that he was picking up a box from the ground to scan it when he had his accident.  *Id.*  The

18   VE then classified Plaintiff's work as warehouse worker (DOT No. 922.687-058, Medium, Unskilled,

19   SVP 2).  *Id.*  The ALJ asked whether someone could learn that job within two months of working at it,

20   and the VE responded that a person could learn it as it was an unskilled position.  AR 805-806.

21        The ALJ then asked the VE hypothetical questions.  For the first hypothetical, the ALJ asked

22   the VE to consider a hypothetical person with the same age, education, and past job as Plaintiff, and

23   who would be limited to: lifting and carrying 50 pounds occasionally and 25 pounds frequently; sitting

24   six hours in an eight hour day; standing or walking six hours in a day; frequent climbing of ramps and

25   stairs; occasional climbing of ladders, ropes, and scaffolds; frequent stooping, kneeling crouching, and

26   crawling; and performing simple, routine tasks.  AR 806.  The VE testified that the hypothetical

27   individual could still perform the past warehouse worker job.  *Id.*

28

1        For the second hypothetical, the ALJ asked the VE to consider the same individual from the

2   first hypothetical, but added the limitation that this individual would be limited to: standing and

3   walking only four hours in an eight-hour day; would be limited to occasional climbing of ramps and

4   stairs; and would be limited to occasional stooping, kneeling, crouching, and crawling.  *Id.*  The VE

5   testified that the individual could not perform the warehouse worker job as it is generally performed.

6   *Id.*  However, the VE testified that the hypothetical individual could perform other work including

7   Packager (DOT No. 559.687-074) a position involving "light, unskilled, SVP 2" work with 53,000

8   jobs nationally; Assembler (DOT No. 929.587-010), a position involving "light, unskilled, SVP 2"

9   work with 45,000 jobs nationally; or Inspector (DOT No. 920.687-194), a position involving "light,

10  unskilled, SVP 2" work with 50,000 jobs nationally.  AR 807.  The VE testified that all three examples

11  "are bench work in nature and would allow a sit/stand option at will."  *Id.*

12       For the third hypothetical, the ALJ asked the VE to consider the same individual from the

13  second hypothetical, but the individual would need to elevate their legs to waist height for

14  approximately twenty percent of the work day.  *Id.*  The VE testified that this would likely be beyond

15  most employers' tolerance and preclude full-time work, so there would be no jobs available.  *Id.*  The

16  VE then testified that his testimony was consistent with the Dictionary of Occupational Titles for "the

17  most part," but noted that the issues of elevating a leg or a sit/stand option were not addressed by the

18  Dictionary of Occupational Titles.  *Id.*  The VE testified that for those issues, he relied on his

19  experience, education, and training, but his testimony was otherwise consistent with the Dictionary of

20  Occupational Titles.  *Id.*

21       On examination, Plaintiff's attorney asked the VE whether he had seen the inspector job

22  performed as described in the Dictionary of Occupational Titles.  AR 808.  The VE stated that he had

23  seen the job performed in Los Angeles County, Orange County, and San Diego County.  *Id.*  The VE

24  said that the inspector job consisted of tapping lids of cans or jars with a stick as they pass on a

25  conveyor to determine if the container is vacuum sealed, removing any defective containers for

26  processing, and potentially feeding containers into the vacuum chamber to determine if the cans are

27  sealed.  AR 809.  The VE testified that there are 50,000 inspector jobs and noted that he had not

28  "interviewed everyone that does that job" but used "Job Browser Pro by SkillTRAN and speaking

1   with employers" to determine the employment numbers.  *Id.*  The VE stated that he used the "most

2   recent" version of Job Browser Pro for the employment numbers.  AR 809-810.  Plaintiff's attorney

3   then asked if the VE could provide the precise job numbers from the most current Job Browser Pro,

4   and the VE responded that he did not have the specific number at hand.  AR 810.  Plaintiff's attorney

5   noted that given the lack of employment numbers, he was unable to further question the VE on that

6   issue.  *Id.*  Plaintiff's attorney concluded by noting Plaintiff's worsening conditions and decreased

7   standing and walking capability.  *Id.*

8           **Plaintiff's September 22, 2022 Objections**

9           On September 22, 2022, Plaintiff submitted objections to the VE's September 15, 2022 hearing

10  testimony, contending that Job Browser Pro showed far fewer jobs for the Dictionary of Occupational

11  Titles ("DOT") codes the VE suggested.  AR 999.  These objections included screenshots of Job

12  Browser Pro demonstrating that there were 6,135 Inspector and Hand Packager jobs, 582 Nut and Bolt

13  Assembler jobs, and 336 Vacuum Tester (Cans) jobs.  AR 999-1002.  The objections also included an

14  email reply from SkillTRAN president Jeff Truthan confirming that the full-time DOT employment

15  estimates were accurate for the latest version of Job Browser Pro.  AR 1003-1004. These objections

16  were not addressed in the ALJ's decision.  *See* AR 764-786.

17          **Medical Record**

18          The relevant medical record was reviewed by the Court and will be referenced below as

19  necessary to this Court's decision.

20          **The ALJ's Decision**

21          Using the Social Security Administration's five-step sequential evaluation process, the ALJ

22  determined that Plaintiff was not disabled under the Social Security Act.  AR 764-786.  Specifically,

23  the ALJ found that Plaintiff had not engaged in substantial gainful activity for a continuous 12-month

24  period despite having engaged in substantial gainful activity in the fourth quarter of 2018.  AR 770.

25  The ALJ identified the following severe impairments: status post deep vein thrombosis of the right

26  leg; bilateral pes planus; posttraumatic degenerative disease of the right knee; degenerative arthritis of

27  bilateral feet and ankles; and unspecified depressive disorder.  AR 770-771.  The ALJ additionally

28  evaluated and discussed other impairments that did not constitute severe medically determinable

6

1   impairments, including Plaintiff's alcohol and cocaine use disorders and alleged lower back pain,

2   PTSD, and schizophrenia.  AR 771.  The ALJ noted that these impairments were either in "sustained

3   remission in a controlled environment" or "not medically determinable impairments due to a lack of

4   objective evidence."  *Id.*   The ALJ determined that Plaintiff did not have an impairment or

5   combination of impairments that met or medically equaled any of the listed impairments.  AR 771-

6   773.

7          Based on a review of the entire record, the ALJ found that Plaintiff retained the RFC to

8   perform medium work with the limitations that Plaintiff can carry 50 pounds occasionally and 25

9   pounds frequently; sit for 6 hours; stand for four hours; walk for four hours; "push/pull as much as can

10  lift/carry;" occasionally climb ramps and stairs; can stoop, kneel, crouch, or crawl; and can perform

11  simple, routine tasks.  AR 773-777.  The ALJ considered all of Plaintiff's "symptoms and the extent to

12  which these symptoms can reasonably be accepted as consistent with the objective medical evidence

13  and other evidence," as well as "the medical opinion(s) and prior administrative medical finding(s)."

14  *Id.*

15         Given this RFC, the ALJ found that Plaintiff was unable to perform any past relevant work.

16  AR 777.  However, the ALJ found that there were jobs that existed in significant numbers in the

17  national economy that Plaintiff could perform given Plaintiff's age, education, work experience, and

18  RFC based upon the VE's testimony, including: Packager (DOT No. 559.687-074, light, SVP 2, with

19  53,000 jobs in the national economy); Assembler (DOT No. 929.587-010, light, SVP 2, with 45,000

20  jobs in the national economy); and Inspector (DOT No. 920.687-194, light, SVP 2, with 50,000 jobs in

21  the national economy).  AR 778.  The ALJ noted that the VE's testimony was inconsistent with the

22  Dictionary of Occupational Titles but explained that the discrepancy was caused by the VE's opinion

23  on elevation of legs and a sit/stand option, which the VE based on his experience.  *Id.*  The ALJ

24  therefore concluded that Plaintiff had not been disabled from November 29, 2017.  AR 779.

25                                    **SCOPE OF REVIEW**

26         Congress has provided a limited scope of judicial review of the Commissioner's decision to

27  deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this

28  Court must determine whether the decision of the Commissioner is supported by substantial evidence.

                                          7

1    42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*,

2    402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

3    1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as

4    adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be

5    considered, weighing both the evidence that supports and the evidence that detracts from the

6    Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

7    evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.,*

8    *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

9    determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

10   and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

11   *Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

12                                              **REVIEW**

13         In order to qualify for benefits, a claimant must establish that he or she is unable to engage in

14   substantial gainful activity due to a medically determinable physical or mental impairment which has

15   lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §

16   1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such

17   severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

18   her age, education, and work experience, engage in any other kind of substantial gainful work which

19   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

20   burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

21   1990).

22                                          **DISCUSSION**[3]

23         Plaintiff contends that the ALJ erred at Step Five of the five-step process by failing to properly

24   identify a significant number of jobs within the Plaintiff's RFC, and that this error should be remedied

25

26

27   _____

28   [3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

1   by an award of benefits.  (Doc. 13 at 14-21.)  Defendant agrees that the ALJ erred in evaluating

2   Plaintiff's claim but argues that matter should instead be remanded.  (Doc. 16 at 2.)

3        **A.  Step Five Error**

4        At Step Five, the burden shifts to the Commissioner to show that the claimant retains the

5   ability to perform other gainful activity.  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir.

6   2006).  To support a Step Five finding that a claimant is not disabled, the Commissioner must provide

7   evidence demonstrating that other work exists in significant numbers in the national economy that the

8   claimant can perform, given his or her age, education, work experience, and RFC.  20 C.F.R. § §

9   404.1520(g), 416.920(g).  ALJs routinely rely on the DOT "in evaluating whether the claimant is able

10  to perform other work in the national economy."  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th

11  Cir.1990) (citations omitted); see also 20 C.F.R. §§ 404.1566(d)(1) (DOT is source of reliable job

12  information), 416.966(d)(1) (same).  The DOT is the rebuttable presumptive authority on job

13  classifications.  *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).  "[A]n ALJ may rely on

14  expert testimony which contradicts the DOT, but only insofar as the record contains persuasive

15  evidence to support the deviation."  *Id*.  An ALJ may not rely on a VE's testimony regarding the

16  requirements of a particular job without first inquiring whether the testimony conflicts with the DOT,

17  and if so, the reasons therefor.  *Massachi v. Astrue*, 486 F.3d 1149, 1152–53 (9th Cir. 2007).

18       The Social Security Administration's Hearings, Appeals, and Litigation Law Manual

19  ("HALLEX") additionally describes the ALJ's duties related to VE testimony.  *See* HALLEX I-2-6-

20  74(B); HALLEX I-2-5-30(B).  During the hearing, the ALJ "must (on the record)… Ask the claimant

21  and the representative whether they have any objection(s) to the VE testifying; and Rule on any

22  objection(s)" and "may address the objection(s) on the record during the hearing, in narrative form as

23  a separate exhibit, or in the body of his or her decision."  HALLEX I-2-6-74(B).  Further, HALLEX

24  notes that the "claimant may state objections to the expert based on perceived bias or lack of

25  expertise" and the "ALJ will respond to any objections, either in writing or on the record at the

26  hearing."  HALLEX I-2-5-30(B).

27       On September 22, 2022, Plaintiff timely filed objections that included screenshots of a Job

28  Browser Pro search demonstrating that there were 6,135 Inspector and Hand Packager jobs, 582 Nut

1   and Bolt Assembler jobs, and 336 Vacuum Tester (Cans) jobs.  AR 999-1002.  Plaintiff further

2   included an email reply from SkillTRAN president Jeff Truthan confirming that the full-time DOT

3   employment estimates were accurate for the latest version of Job Browser Pro.  AR 1003-1004. These

4   objections were not addressed in the ALJ's decision.  *See* AR 764-786.  In its opposition, Defendant

5   "concedes that… the ALJ erred by failing to address, or rule upon, Plaintiff's post-hearing objections

6   to [VE] Dr. Cumming's testimony."  (Doc. 16 at 6.)  Given the ALJ's failure to account for Plaintiff's

7   objections to the VE's testimony, the Court concludes that the ALJ erred at Step Five.  This error was

8   not harmless, as the ALJ concluded that Plaintiff could perform at least three jobs based upon the

9   contested VE testimony.  AR 778.

10        **B.  Remedy**

11        Plaintiff argues that the ALJ's error should be remedied by an award of benefits.  (Doc. 13 at

12   14-21; Doc. 17 at 2-4.)  Defendant argues that this error should be remedied by remanding the matter

13   to the ALJ to resolve the conflict between VE Cummings's employment estimates and Plaintiff's post-

14   hearing objections.  (Doc. 16 at 6.)

15        The decision whether to remand for further proceedings or order an immediate award of

16   benefits is within the Court's discretion.  *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir.

17   2000).  Unless "the record has been fully developed and further administrative proceedings would

18   serve no useful purpose," remand for further proceedings is warranted.  *Garrison v. Colvin*, 759 F.3d

19   995, 1020 (9th Cir. 2014).  As it is not clear that "further administrative proceedings would serve no

20   useful purpose," the Court finds remand for further proceedings is appropriate.  *Id.*; see also

21   *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of

22   the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the

23   proper course, except in rare circumstances, is to remand to the agency for additional investigation or

24   explanation.") (internal quotes and citations omitted); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775

25   F.3d 1090, 1101, n.5 (9th Cir. 2014) (remand for further administrative proceedings is the proper

26   remedy "in all but the rarest cases").  The Ninth Circuit has also noted that, "[a]dministrative

27   proceedings are generally useful where the record 'has [not] been fully developed,' there is a need to

28   resolve conflicts and ambiguities, or the 'presentation of further evidence ... may well prove

10

1     enlightening' in light of the passage of time." *Treichler*, 775 F.3d at 1101 (citations omitted).  The

2     conflict here between the job numbers in Plaintiff's objections and the job numbers in the VE's

3     testimony suggests additional administrative proceedings would be useful.

4          Plaintiff argues that Defendant has "already had two bites at the apple," and to "remand this

5     matter for further administrative proceedings, but this approach would effectively reverse the burden

6     of proof."  (Doc. 13 at 21.)  Prior to the instant error, following the Administration's first review of

7     Plaintiff's case, the Appeals Council ultimately remanded the case and noted errors including the VE's

8     selection of a surveillance system monitor job with Reasoning Level 3 that apparently conflicted with

9     Plaintiff's RFC and with the VE's job estimate numbers for an assembler job and a table worker job.

10    AR 861-862.  In its remand order, the Appeals Council stated that, upon remand, the "ALJ will ask the

11    VE to identify examples of appropriate jobs and to state the incidence of such jobs in the national

12    economy… Further, before relying on the VE evidence, the ALJ will identify and resolve any conflicts

13    between the occupational evidence provided by the VE and information in the DOT and its companion

14    publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p)."  AR 862.

15         However, Plaintiff cites no authority suggesting that benefits should be awarded in place of

16    resolving the conflict between the VE's job estimates and Plaintiff's objections.  Instead, Plaintiff cites

17    cases in which courts remanded to resolve discrepancies in job estimates.  *White v. Kijakazi*, 44 F.4th

18    828 (9th Cir. 2022); *Buck v. Berryhill*, 869 F.3d 1040 (9th Cir. 2017).  Additionally, the Ninth Circuit

19    has cautioned that, where "there is conflicting evidence, and not all essential factual issues have been

20    resolved, a remand for an award of benefits is inappropriate."  *Treichler*, 775 F.3d at 1101.  Given the

21    discrepancy between the VE's testimony and Plaintiff's objections regarding job estimates, remand is

22    appropriate here.

23         Plaintiff further argues that if "the Commissioner cannot meet her step-five burden, the

24    regulations direct that she must award benefits."  (Doc. 17 at 3.)  This misstates the factual

25    circumstances in this matter and requirements of the Commissioner.  The Code of Federal Regulations

26    notes that if "work that you can do does not exist in the national economy, we will determine that you

27    are disabled," it also notes that "if work that you can do does exist in the national economy, we will

28    determine that you are not disabled."  20 C.F.R. § 416.966(b).  While the ALJ erred in failing to

1  examine Plaintiff's objections related to the VE's job estimate testimony, the Court cannot determine

2  that there is no work available for Plaintiff in the national economy.  Accordingly, remanding to

3  resolve the conflict in job estimate numbers is the more suitable remedy.

4  **CONCLUSION AND ORDER**

5        Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial

6  evidence in the record as a whole and is not based on proper legal standards.  Accordingly, the

7  decision is REVERSED and the case REMANDED to the ALJ for further proceedings consistent with

8  this order.  The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Eric L. Wayne

9  and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

10

11  IT IS SO ORDERED.

12      Dated:   **October 26, 2023**               /s/ *Barbara A. McAuliffe*

13                                UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28